**Robert Francis RITZ, Appellant**

v.

**The STATE of Texas**

**NO. PD-1661-15**

Court of Criminal Appeals of Texas.

Delivered: June 14, 2017

Rehearing Overruled August 23, 2017

---

Linda Icenhauer-Ramirez, Austin, for Appellant.

Lisa McMinn, Brian Erskine, for the State of Texas.

Per curiam.

A jury convicted Ritz of continuous trafficking of a person. The court of appeals affirmed the conviction and held that the evidence was legally sufficient under the plain text of the statute even though the facts did not involve "organized crime, prostitution, or forced labor."[1] This Court initially granted discretionary review to examine that holding. Having examined the record and briefs, we conclude that our decision to grant review was improvident. We therefore dismiss Appellant's petition for discretionary review as improvidently granted.

Newell, J. filed a concurring opinion in which Hervey, Yeary, and Keel JJ. joined.

Keller, P.J., filed a dissenting opinion in which Walker, J. joined.

Newell, J., filed a concurring opinion in which Hervey, Yeary, and Keel JJ. joined.

A jury convicted Ritz of continuous trafficking of a person based upon his driving a fourteen-year-old girl to his home and having sex with her on multiple occasions. The court of appeals affirmed the conviction and held that the evidence was legally sufficient under the plain text of the statute even though the facts did not involve "organized crime, prostitution, or forced labor."[1] This Court initially granted discretionary review to examine that holding,

but now dismisses Appellant's petition for discretionary review as improvidently granted. The Court rightly concludes that there is no room for material improvement on the court of appeals' opinion. Further, reaching the contrary conclusion requires this Court to redraft the statute to add terms that our legislature did not include and risks substituting our own policy considerations for those of our legislature.

## The Facts

The court of appeals correctly lays out the relevant facts in its opinion below.

Ritz met K.D., the complaining witness, through an online dating site. Ritz, who was 44 years old at the time, and K.D., who was 14 at the time, eventually began meeting in person and entered into a sexual relationship. At first, the two would have sex in Ritz's vehicle or on a blanket outside. Later, K.D. began sneaking out of her parents' home to see Ritz. Ritz would pick K.D. up near her home, drive her to his home, have sex with her there, and then drop her off near her home. K.D. testified that their sexual encounters began in early fall 2012 and ended in January 2013.

While working on an online harassment case involving K.D.'s friend, police learned that K.D. was involved in a relationship with an adult male. After extracting information from K.D.'s electronic devices, police began the investigation of Ritz that led to his arrest. At trial, the State introduced text messages between Ritz and K.D. which, according to the State, show that Ritz continued his relationship with K.D. even after he learned that she was a minor.[2]

---

1. *Ritz v. State*, 481 S.W.3d 383, 386 (Tex. App.—Austin 2015).

1. *Ritz v. State*, 481 S.W.3d 383, 386 (Tex. App.—Austin 2015).

2. *Id.* at 384.

At trial, K.D. testified that Ritz drove her 20 or 25 minutes in order to have sex with her at his home on multiple occasions. She also testified that this sexual relationship lasted longer than 30 days. The court of appeals also noted that Ritz acknowledged in his brief that, in viewing the evidence in the light most favorable to the verdict, the evidence shows that he "transported" K.D. to several places not more than 10 miles from her home for the purpose of engaging in sexual relations with her.[3] It is equally undisputed that K.D. was 14 years old throughout her sexual relationship with Ritz.

### The Standard of Review

The court of appeals also correctly set out the applicable standard of review.

> In reviewing whether the evidence is sufficient to support a conviction, "an appellate court must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt." *Schneider v. State*, 440 S.W.3d 839, 841 (Tex. App.—Austin 2013, pet. ref'd) (mem. op.); *see also Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)(plurality op.).[4]

Of course, in some cases, sufficiency of the evidence turns on the meaning of the statute under which the defendant has been prosecuted.[5] This strain of law appears to have started with the Court analyzing whether a court of appeals erred by construing a statutory term too restrictively when conducting a legal sufficiency analysis.[6] We have recognized that this is necessary to avoid dissimilar outcomes attendant to alternative statutory interpretations.[7] And by the time we reached *Liverman v. State*, the question had grown from the analysis of a statutory term to the question of whether certain conduct actually constitutes an offense under the statute with which the defendant has been charged.[8] Still, in these cases, the Court is not responding directly to a statutory-construction complaint; it is only concerned with whether the evidence at issue satisfies the statute not how the statute works in every circumstance.[9]

The construction of a statute is a question of law that we review *de novo*.[10] Courts must construe a statute in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the literal text leads to absurd results that the legislature could not possibly have intended.[11] As the court of appeals observed below, "As long as a statute is constitutional (and Ritz had not challenged the constitutionality of this statute),

---

3. *Id.* at 385.

4. *Id.* at 384.

5. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015).

6. *Thomas v. State*, 65 S.W.3d 38, 39 (Tex. Crim. App. 2001) (analyzing whether the term "evidence of indebtness" as used in the definition of security in the Texas Securities Act requires a writing).

7. *Moore v. State*, 371 S.W.3d 221, 227 (Tex. Crim. App. 2012).

8. *Liverman*, 470 S.W.3d at 836.

9. *Moore*, 371 S.W.3d at 227 ("Although statutory-construction complaints generally may not be raised for the first time on appeal, appellate construction of a statute may be necessary to resolve an evidence-sufficiency complaint when alternative statutory interpretations would yield dissimilar outcomes.").

10. *Id.* at 230.

11. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

we must enforce the statute as it is written, not as it might or even should have been written."[12] Where a statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from the statute.[13]

### Is the Statute Ambiguous?

Section 20A.03 of the Penal Code makes it a crime if a person, during a period that is 30 or more days in duration, engages two or more times in conduct that constitutes the offense of "trafficking of persons" against one or more victims.[14] Section 20A.02(a) of the Penal Code lists all the different ways in which a person can commit the offense of "trafficking of persons."

(a)   A person commits an offense if the person knowingly:

   (1)   traffics another person with the intent that the trafficked person engage in forced labor or services;

   (2)   receives a benefit from participating in a venture that involves an activity described by Subdivision (1), including by receiving labor or services the person knows are forced labor or services;

   (3)   traffics another person and, through force, fraud, or coercion, causes the trafficked person to engage in conduct prohibited by:

      (A)   Section 43.02 (Prostitution);

      (B)   Section 43.03 (Promotion of Prostitution);

      (C)   Section 43.04 (Aggravated Promotion of Prostitution); or

      (D)   Section 43.05 (Compelling Prostitution);

   (4)   receives a benefit from participating in a venture that involves an activity described by Subdivision (3) or engages in sexual conduct with a person trafficked in the manner described in Subdivision (3);

   (5)   traffics a child with the intent that the trafficked child engage in forced labor or services;

   (6)   receives a benefit from participating in a venture that involves an activity described by Subdivision (5), including by receiving labor or services the person knows are forced labor or services;

   (7)   traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by:

      (A)   Section 21.02 (Continuous Sexual Abuse of Young Child or Children);

      (B)   Section 21.11 (Indecency with a Child);

      (C)   Section 22.011 (Sexual Assault);

      (D)   Section 22.021 (Aggravated Sexual Assault);

      (E)   Section 43.02 (Prostitution);

      (F)   Section 43.03 (Promotion of Prostitution);

      (G)   Section 43.04 (Aggravated Promotion of Prostitution);

      (H)   Section 43.05 (Compelling Prostitution);

      (I)   Section 43.25 (Sexual Performance by a Child);

---

12.   *Ritz*, 481 S.W.3d at 386; *see also Boykin*, 818 S.W.2d at 785 (courts seek to effectuate intent of legislators "because our state constitution assigns the law *making* function to the Legislature while assigning the law *interpreting* function to the Judiciary.").

13.   *Boykin*, 818 S.W.2d at 785.

14.   Tex. Penal Code § 20A.03 ("Continuous Trafficking of Persons"); *see also* Tex. Penal Code § 20A.02 ("Trafficking of Persons").

(J) Section 43.251 (Employment Harmful to Children); or

(K) Section 43.26 (Possession or Promotion of Child Pornography); or

(8) receives a benefit from participating in a venture that involves activity described by Subdivision (7) or engages in sexual conduct with a child trafficked in the manner described in Subdivision (7).[15]

The State charged Ritz with a violation of the "continuous trafficking of persons" statute (Section 20A.03) based upon repeated violations of the "trafficking of person" statute (Section 20A.02).

[Appellant did] then and there, during a period that was 30 or more days in duration, to wit: from on or about May 6, 2012 through January 19, 2013, commit two or more acts of trafficking of persons, namely:

1. Intentionally or knowingly traffic by transport [complainant], a child, and cause [complainant] to engage in or become a victim of indecency with a child, where with the intent to arouse or gratify the sexual desire of said defendant, he did intentionally or knowingly cause [complainant], a child younger than 17 years of age, to engage in sexual contact by causing the said [complainant] to touch the genitals of the defendant[.]

2. Intentionally or knowingly traffic by transport [complainant], a child, and cause [complainant] to engage in or become a victim of sexual assault of a child, and did intentionally or knowingly cause the penetration of the sexual organ [of complainant], a child who was then and there younger than 17 years of age, by defendant's sexual organ[.]

The State alleged that Ritz had transported the victim and repeatedly caused her to become the victim of both sexual assault of a child and indecency with a child.[16]

At no point on appeal did Ritz argue that the legislature's use of passive voice in subsection (7) and its use of active voice in subsection (8) renders the statute ambiguous. Ritz does not argue that the statute's structure is designed to criminalize either trafficking or exploitation rather than both trafficking and exploitation. To the contrary, Ritz agrees that a literal reading of the statute applies to his conduct. His argument has consistently been that the statute makes the punishment for the commission of the individual offenses of "Sexual Assault of a Child" and "Indecency with a Child by Contact" more egregious upon a simple showing that a defendant moves the victim from one place to another. According to Ritz, the absurd result lies in a literal interpretation of the broad definition that the legislature provided for "traffic." Nevertheless, even had Ritz made this argument regarding ambiguity, it would fail because it assumes limitations in the text of the statute that are not there.

First, the only thing evident from the plain text of the statute is that the legislature sought to criminalize both human trafficking and the exploitation of human trafficking victims. For example, Section 20A.02(a)(1) criminalizes the trafficking of a person for forced labor, while section 20A.02(a)(2) criminalizes the use of that labor.[17] Section 20A.02(a)(5) criminalizes the trafficking of a child for forced labor, while Section 20A.02(a)(6) criminalizes the use of that child labor.[18] In both situations,

**15.** Tex. Penal Code § 20A.02(a).

**16.** Tex. Penal Code § 20A.02(a)(7)(B); Tex. Penal Code § 20A.02(a)(7)(C).

**17.** *Compare* Tex. Penal Code § 20A.02(a)(1) *with* Tex. Penal Code § 20A.02(a)(2).

**18.** *Compare* Tex. Penal Code § 20A.02(a)(5) *with* Tex. Penal Code § 20A.02(a)(6).

the person receiving the benefit of the slave labor is just as culpable as the person providing the slave labor because both parties are responsible for the exploitation.

Additionally, Section 20A.02(c) provides that "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections." [19] The legislature limited this in subsection (d) by prohibiting (with some exceptions) simultaneous prosecution for both continuous human trafficking and continuous sexual abuse of a child.[20] Under the plain text of the statute, the legislature sought to provide as much protection for exploited people and children as possible by allowing prosecution for both human trafficking and the product of that trafficking. There is no suggestion that the person who traffics in children be treated differently than those who exploit those children.

Second, the legislature's use of passive voice in subsection (7) demonstrates a legislative intent to protect children, not those who traffic them. By using the passive voice the legislature intentionally left the identity of who abuses the child open. Had the legislature truly envisioned "two culpable actors" within the same offense when drafting the statute it would have said so. But it did not specify that the person engaging in human trafficking in subsection (7) had to be different from the person victimizing the child. The legislature contemplated criminalizing situations where the trafficker engages in both the traffic and the victimization, in addition to situa-

tions where the trafficker transports the child without subsequently victimizing her.

Finally, the use of active voice in subsection (8) would seem to put the debate to rest. Under that subsection, a person commits an offense if he engages in sexual conduct with a child trafficked in a manner described in subdivision (7). Just as subdivision (7) places no limitation on who victimizes the trafficked child, subdivision (8) places no limitation on who traffics the child "in the manner described in Subdivision (7)." Had the legislature truly intended an "either-or" scenario, it would have written "engaged in sexual conduct with a child trafficked by another." It did not. The plain text demonstrates our legislature's focus upon protecting exploited children, not exempting human traffickers from criminal liability for abusing those whom they traffic.

In short, nothing in the plain text of the statute evidences the legislature's perception that a person either traffics a child or exploits a child but not both. The suggestion that the statute is ambiguous does not spring from the text of the statute itself; it comes from reading terms into the statute in order to justify a conclusion that the statute is ambiguous. The Court does not need to grant discretionary review to clarify an ambiguity that was never argued and that does not exist.[21]

### Does the Statute Lead to Absurd Results?

We have long recognized that we should not apply the language of a statute literally if doing so would lead to absurd consequences that the legislature could not *pos-*

---

19.  TEX. PENAL CODE § 20A.02(c).

20.  TEX. PENAL CODE § 20A.02(d).

21.  *See Coit v. State*, 808 S.W.2d 473, 475 (Tex. Crim. App. 1991) ("'Where the statute is clear and unambiguous the Legislature must

be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute.'") (quoting *Ex parte Davis*, 412 S.W.2d 46, 52 (Tex. Crim. App. 1967)).

*sibly* have intended.[22] This exception is a narrow one, however, and is regarded as such to avoid intruding upon the lawmaking powers of the legislative branch.[23] This narrow exception is intended to demonstrate respect for the legislative branch by presuming that the legislature would not act in an absurd way.[24]

But determining whether a particular result is absurd is a dangerously subjective endeavor. Our sister court has observed that the bar for concluding a plain-faced interpretation of a statute would lead to absurd results is, and should be, high.[25] It should be reserved for truly exceptional cases, and mere oddity does not equal absurdity.[26] Even if a consequence is unintended, improvident, or inequitable, it may still fall short of being unthinkable or unfathomable.[27] The focus should be on whether it is quite impossible that a rational legislature could have intended it.[28]

Here, again, the court of appeals properly addressed and rejected Ritz's claims that the application of this statute leads to absurd, rather than merely improvident, results. For example, Ritz posits questions regarding how far someone must be transported in order to be considered a victim of trafficking.[29] But we have rejected this argument in the analogous situation of kidnapping.[30]

In *Hines v. State*, the State charged the defendant with kidnapping for his participation in a bank robbery.[31] There, two men sought to rob a bank and did so by holding one of the tellers at gun point and forcing her inside the back to open the vault.[32] When the robbery plan fell apart, the two men, one of whom was later identified as the defendant, fled the bank.[33] The State charged the defendant with both aggravated robbery and aggravated kidnapping by abduction.[34]

The question in *Hines* was whether the definition of "interfere substantially" in the kidnapping statute led to absurd results because it could be applied to temporary confinement or slight movement of the victim incidental to another substantive criminal offense.[35] We rejected the argument

---

22. *Boykin*, 818 S.W.2d at 785.

23. *Id.*

24. *Id.*

25. *See Combs v. Health Care Services Corp.*, 401 S.W.3d 623, 630 (Tex. 2013).

26. *Id.*

27. *Id.*

28. *Id.* at 630-31; *see also Bizzelle v. State*, 134 Tex.Crim. 467, 116 S.W.2d 385, 386 (Tex. Crim. App. 1938) ("It seems to us that a strictly literal construction of the statute in question would make compliance therewith impossible and contravene the intention of the Legislature in passing it.").

29. He also devotes time to the other ways in which someone can be "trafficked." Under the statute, "traffic" means "to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." TEX. PENAL CODE. § 20A.01(4). But the State only alleged that Ritz had "transported" the victim. Consequently, the court of appeals properly avoided the rabbit-hole of imagining every possible application of the word "traffic" by focusing only upon the essential elements of the offense under the hypothetically correct jury charge.

30. *Hines v. State*, 75 S.W.3d 444, 447 (Tex. Crim. App. 2002).

31. *Id.* at 445.

32. *Id.*

33. *Id.* at 445-46.

34. *Id.* at 446 & n. 2.

35. *Id.* at 445.

that the phrase led to absurd results.[36] We did so even while acknowledging that "there is nothing in the Texas statute that even *suggests* that it is necessary for the State to prove that a defendant moved his victim a certain distance, or that he held him a specific length of time before he can be found guilty of kidnapping."[37] We consequently rejected the defendant's legal sufficiency claim that he could not be convicted of kidnapping even though the victim had been transported only a short distance within the bank.[38] If that is not an absurd application of the kidnapping statute, neither is this application of the trafficking statute.

Though the court of appeals recognized that applying the human trafficking statute to the facts of this case suggest an unintended result, it properly determined that it was not an absurd one.[39] The court of appeals noted that the dictionary definition of transport is "[t]o carry, convey, or remove from one place or person to another; to convey across."[40] Ultimately, it was up to Ritz to demonstrate that it was absolutely impossible for the legislature to rationally intend this application of the statute. The court of appeals properly determined that regardless of how broadly the statute was written, it was still at least possible that our legislature did intend to classify Ritz's conduct as trafficking based upon the plain text of the statute. Because the court of appeals' decision was correct in this regard, there was no need to resort to extratextual factors.

## Conclusion

Ritz's challenge to the sufficiency of the evidence is not really a challenge to the evidence. While he does challenge the specific application of the statute to the facts of his case, he attempts to overturn his conviction by arguing how the statute might hypothetically operate in extreme circumstances unrelated to his own case. This is actually just an overbreadth or vagueness challenge to the statute in disguise without the usual standards or presumptions. If we would like to address those issues, we should wait until we are faced with actual challenges to the constitutionality of the statute. Recognizing that Ritz did not purport to be challenging the constitutionality of the statute, the court of appeals properly addressed the legal sufficiency claim before it. I agree with this Court's dismissal of Ritz's petition for discretionary review because the court of appeals adequately addressed the issue before it below.

With these thoughts I concur.

Keller, P.J., filed a dissenting opinion in which Walker, J., joined.

On numerous occasions, appellant drove a fourteen-year-old girl to his home and had sex with her. He was convicted of the offense of continuous trafficking of persons, which was in turn based upon the commission of multiple offenses of trafficking of persons.[1] The offenses of trafficking of persons were in turn based upon appellant trafficking a child and causing the child to be a victim of the offenses of

---

36. *Id.* at 447 ("Not only is the phrase " 'interfere substantially' " unambiguous, but application of its plain meaning in the context of the kidnapping statute does not lead to absurd results.").

37. *Id.*

38. *Id.* at 448.

39. *Ritz*, 481 S.W.3d at 386.

40. *Id.* at 386 n.3 (quoting *The Compact Oxford English Dictionary* 2100 (2d ed. 1994)).

1. *See* Tex. Penal Code § 20A.03(a).

indecency with a child and sexual assault.[2] I would hold that this variant of the offense of trafficking of persons occurs only when the person who traffics the child is a different person from the one who commits a sexual offense against the child. Because the evidence showed that appellant was the only person involved in transporting and committing sex offenses against the child, the evidence was insufficient to support appellant's conviction. Consequently, rather than dismissing this petition as improvidently granted, I would reverse the judgments of the courts below, reform appellant's conviction to a lesser-included offense, and remand the case to the trial court for a new punishment hearing.

## I. BACKGROUND

Appellant was a forty-four-year-old man who met a fourteen-year-old child through an online dating site. The two eventually began meeting in person and entered into a sexual relationship. At first, the two would have sex in appellant's vehicle or on a blanket outside. Later, the child would sneak out of her home, and appellant would pick her up and drive her to his home to have sexual relations. The sexual encounters began in early fall 2012 and ended in January 2013.

Appellant's indictment alleged that he: Did then and there, during a period that was 30 or more days in duration, to wit: from on or about May 6, 2012 through January 19, 2013, commit two or more acts of trafficking of persons, namely:

1. Intentionally or knowingly traffic by transport [complainant], a child, and cause [complainant] to engage in or become a victim of indecency with a child, where with the intent to arouse or gratify the sexual desire of said defendant, he did intentionally or knowingly cause [complainant], a child younger than 17 years of age, to engage in sexual contact by causing said [complainant] to touch the genitals of the defendant.

2. Intentionally or knowingly traffic by transport [complainant], a child, and cause [complainant] to engage in or become a victim of sexual assault of a child, and did intentionally or knowingly cause the penetration of the sexual organ [of] [complainant], a child who was then and there younger than 17 years of age, by defendant's sexual organ.[3]

Appellant was convicted and sentenced to life in prison.

On appeal, appellant contended that the evidence was insufficient to support his conviction. He posed the question as, "Does appellant's alleged conduct of transporting the alleged victim a few miles in his personal car for the purpose of having a sexual relationship with the victim constitute the offense of 'trafficking' as the legislature intended?" Appellant contended that the legislature "did not envision a person in appellant's circumstances being prosecuted for the crime of trafficking of persons." He contended that, instead, the trafficking statute was directed against "the conduct of individuals who participate in the modern-day slave trade." Appellant also claimed that applying the language of the statute so broadly that it encompasses cases such as his own leads to an absurd result that the legislature could not have intended.

The court of appeals agreed that appellant's conduct "[did] not constitute what would ordinarily be considered 'human trafficking,'" but the court concluded that the language of the trafficking statute was broad and that appellant's acts of

---

**2.** *See id.* § 20A.02(a)(7)(B), (C)

**3.** The bracketed word "complainant" is substituted for the complainant's name.

transporting the child and committing sex offenses against her conformed to that language.[4] The court disagreed with appellant's contention that such a construction leads to absurd results, reasoning that the legislature might have "wished to significantly increase the sentences available for persons who commit sexual crimes involving children by including all such crimes under the 'trafficking' umbrella." Or, the court of appeals suggested, the legislature could have "determined that removing a child from the safety of her home and driving her miles away to the seclusion of the defendant's home in order to sexually assault her is particularly egregious conduct."[5]

## II. ANALYSIS

### A. Standard of Review

In some cases, sufficiency of the evidence turns on the meaning of the statute under which the defendant has been prosecuted.[6] The construction of a statute is a question of law, to be determined *de novo*.[7] Courts must construe a statute in accordance with the plain meaning of its text unless the language of the statute is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended.[8] If the statute contains ambiguity or leads to absurd results, then a court may consult extratextual factors, which include the object sought to be obtained by the statute, the legislative history, and the consequences of a particular construction.[9] A statute should be read as a whole in determining the meaning of particular provisions,[10] it is presumed that the entire statute is intended to be effective,[11] and each word, clause, or sentence in a statute should be given effect if reasonably possible.[12]

### B. Ambiguity

As it relates to appellant's prosecution, the trafficking statute provides, in subsection (a), subdivision (7):

A person commits an offense if the person knowingly ... traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by ... Section 21.11 (Indecency with a Child) ... [and] Section

---

4. *Ritz v. State*, 481 S.W.3d 383, 385-86 (Tex. App.—Austin 2015).

5. *Id.* at 386.

6. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015).

7. *Id.*

8. *Chase v. State*, 448 S.W.3d 6, 11 (Tex. Crim. App. 2014); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

9. *Chase*, 448 S.W.3d at 11.

10. *Hines v. State*, 906 S.W.2d 518, 520 (Tex. Crim. App. 1995) ("Broadening our focus to the statute as a whole, we derive two reasons that application of Section 21.07 to the facts of this case is not as 'plain' as the State would have it, the statutory definition of 'another' notwithstanding."); *Martin v. State*, 874 S.W.2d 674, 677 (Tex. Crim. App. 1994) ("[I]n the context of the probation statute as a whole, we think it logical to conclude that subsection (b)'s limitation of restitution to 'the victim' refers to the victim of the crime for which the defendant has been charged, convicted, and sentenced."); *Ex parte Crouch*, 838 S.W.2d 252, 254 (Tex. Crim. App. 1992) ("Statutes should be read as a whole and construed to give meaning to every part."); *State v. Rosenbaum*, 818 S.W.2d 398, 402 (Tex. Crim. App. 1991) ("[O]ur reading of this phrase in the context of the statute as a whole leads to an interpretation that in this case the term 'entered by the court' encompasses the signing of an order by the trial judge.").

11. Tex. Gov't Code § 311.021(2).

12. *Liverman*, 470 S.W.3d at 836.

22.011 (Sexual Assault).[13]

The term "traffic" is defined to mean "to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means."[14] The court of appeals's conclusion was that appellant trafficked the fourteen-year-old complainant by transporting her to his home and committed the remainder of the elements of the trafficking offense by committing sex offenses (indecency with a child and sexual assault) against her.

But appellant argues that subdivision (7) should be read in light of subdivision (8), which provides:

> A person commits an offense if the person knowingly ... engages in sexual conduct with a child trafficked in the manner described in Subdivision (7).[15]

When the two subdivisions are read together, it seems evident that the legislature contemplated two culpable actors in a trafficking case that involves a sex offense against a child: (1) the person who delivers the child, punished by subdivision (7), and (2) the person who commits the sex offense against the child, punished by subdivision (8). The trafficking statute contains other subdivisions that follow this two-step structure, with the first subdivision punishing the "trafficker" and the second subdivision punishing the user of the trafficked individual and others associated with the trafficking enterprise.[16] Further, a comparison of subdivisions (7) and (8) shows that the reference to sexual conduct is framed in the passive voice in subdivision (7) ("by any means causes the trafficked child to engage in, or become a victim of") but is framed in the active voice in subdivision (8) ("engages in sexual conduct with a child trafficked"), while the reference to trafficking conduct is framed in the active voice in subdivision (7) but is framed in the passive voice in subdivision (8). The prostitution portion of the trafficking statute employs this same use of active and passive voice with respect to trafficking and sexual conduct, so that subdivision (3) describes the trafficker and subdivision (4) describes the user of the prostitution services. These structural aspects of the statute suggest that the phrase "causes the trafficked to child to engage in, or become the victim of" describes a defendant's act of causing the child to be part of a sex offense with someone other than the defendant. Of course, the use of passive voice does not invariably require a conclusion that the defendant is not himself participating in the activity;[17] it is the parallel nature of the various provisions and the comparison and contrasts between provisions that supports such a conclusion here.[18]

Even if the trafficking statute's structural characteristics listed above do not definitively establish the correct construction of

---

**13.** Tex. Penal Code § 20A.02(a)(7)(B), (C).

**14.** *Id.* § 20A.01(4).

**15.** *Id.* § 20A.02(a)(8). Subdivision (8) also punishes other actors associated with the trafficking enterprise (those who "receive[ ] a benefit from participating in a venture that involves an activity described by Subdivision (7)").

**16.** *See id.* § 20A.02(1) & (2) (forced labor), (3) & (4) (prostitution), (5) & (6) (forced child labor).

**17.** *See* Tex. Penal Code § 22.011(a)(1)(A), (B), (2)(A), (B)("causes the penetration of").

**18.** *See Hines*, 906 S.W.2d at 520 (parallelism between two statutory theories of public lewdness relevant to construing the second theory); *Martin*, 874 S.W.2d at 677 ("[A] reading of the two provisions together leads to the conclusion that subsection (b) serves as a limitation on restitution that can be ordered under subsection (a)," and the context of the probation statute as a whole further narrows the reading of "the victim" in subsection (b)).

that statute, they at least indicate an ambiguity. Ambiguity exists when statutory language may be understood by reasonably well-informed persons in two or more different senses.[19] The court of appeals understood the language of subdivision (7) to apply whenever an actor "traffics" a child and causes, by his own act or someone else's, an enumerated sex offense to be committed against the child. The above discussion shows that subdivision (7) could reasonably be understood to mean something else: that the provision applies only when the actor traffics a child and causes the child to be subjected to a sex offense committed by someone other than the actor.

## C. Absurd Results

But if the statutory language were reasonably subject only to the broad construction placed on it by the court of appeals, then it would lead to absurd results. As outlined above, "traffic" means "to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means."[20] How far must a child be transported? Three feet? From one room in a house to another? What constitutes enticement or recruitment? Is any persuasion by a defendant that succeeds in causing a child to engage in sexual conduct with him sufficient to establish trafficking? What exactly must a defendant do to "harbor" a child that he sexually assaults? Is living with the child sufficient? What if he is living with the child because he is related to the child? What must an actor do to "obtain" a child? Does an actor necessarily obtain a child when he succeeds in committing a sex offense against the child? In-

terpreting the various methods of "traffic" as broadly as possible would render superfluous the statutory provisions that assign punishment to most of the sex offenses in the Penal Code[21] because proving those offenses would necessarily prove the offense of trafficking.[22] Rendering most punishment provisions for sex offenses superfluous is an absurd result. But narrowing the meaning of the words in the definition of "traffic" to avoid rendering those punishment provisions superfluous could unduly narrow the reach of the trafficking offense in situations in which there are separate people trafficking and exploiting a child.

Moreover, even if reasonable grounds could be found for restricting the scope of the various methods of "traffic" that would not unduly restrict the trafficking statute in other respects, those restrictions would create other absurdities when combined with the State's "single perpetrator" interpretation of the statute. The court of appeals thought that it was not necessarily absurd that the defendant would be punished more severely for transporting the child from the safety of her home to a less safe location, but transportation could work both ways. If the actor lives with the child, the actor could take the child home from school and then commit a sexual assault. How is that actor any different from an actor who lives with the child and who sexually assaults the child after the child arrives home from school on a bus? If "entice" and "recruit" can be used to distinguish sex offenses based on an actor's ability to persuade a child to engage in the conduct, then an actor who forces a child

19. *Liverman*, 470 S.W.3d at 836.

20. Tex. Penal Code § 20A.01(4).

21. *See id.* §§ 21.11(d) (indecency with a child, second or third degree felony), 22.011(f) (sexual assault, first or second degree felony),

22.021(e) (aggravated sexual assault, first degree felony), 43.25(e) (sexual performance by a child, second or third degree felony).

22. *See id.* § 20A.02(b)(1).

to engage in the conduct would be punished less severely than an actor who engages in the conduct with a "willing" child. This disparate treatment conflicts with the notion, underlying statutes proscribing sex offenses against children, that children cannot consent to sexual conduct with adults. But even it if it did not conflict with that notion, it would turn traditional morality on its head by punishing a forced sexual assault less severely than an unforced sexual assault.

### D. Extratextual Factors

Appellant argues that the legislative history, in the form of a bill analysis, lends support to construing the statute in his favor. The "Author's/Sponsor's Statement of Intent" section of the bill analysis states:

> Human trafficking is the illegal trade of human beings and is a modern-day form of slavery. Human trafficking is a criminal enterprise frequently cited as the second largest industry in the world.[23]

If human trafficking is the illegal "trade" of human beings, then it follows that there must be at least two individuals, other than the victim or victims, who are involved. With only one individual, a "trade" cannot take place. There must be at least one person who traffics the victim and at least one other person who exploits the victim in some other way, by, for example, committing a sex offense against the victim.

This construction of the statute is further supported by the consequences of construing the trafficking statute to allow a person to be punished as both trafficker and exploiter when no one else is involved in committing an offense against the child. One obvious consequence is that such a

defendant would be criminally liable under both subdivisions (7) and (8), because he would be trafficking the child and causing the child to be a victim of a sex offense in accordance with subdivision (7) and he would be engaging in sexual conduct with a trafficked child in accordance with subdivision (8). This overlap between subdivisions is not by itself a serious concern, but more serious concerns do inhere in the definition of "traffic."

As I have explained above, broadly construing the various methods of traffic (transport, entice, etc.) in conjunction with construing subdivision (7) to apply when there is only a single perpetrator would create results that can at best be described as odd, and at worst as absurd. But narrowly construing the various methods of traffic could result in unduly restricting subdivision (7)'s application in situations that are traditionally understood to be trafficking, when there are separate individuals who traffic and exploit the child. If, however, the statute is restricted to apply only when the person who traffics the child is a different person from the one who commits a sexual offense against the child, then the meaning of the word "traffic" can be broad without creating these oddities or absurdities because the various methods of "traffic" are methods of delivering a child to someone. The trafficker transports the child to another person, entices or recruits the child to meet another person, harbors the child so that the child will be available to another person, provides the child to another person, or otherwise obtains the child for another person.

The object of the trafficking statute, the legislative history, and the consequences of the competing constructions of the statute

---

**23.** Senate Research Center, Bill Analysis, S.B. 24, 82nd Leg., R.S. (August 2, 2011) (first paragraph).

weigh in favor of construing subdivision (7) to apply only when the trafficker and the sex-offense perpetrator are different people. Because appellant was the only person involved in transporting and committing sex offenses against the child, the evidence is insufficient to show that he committed the offense of child trafficking.

### E. Reformation

When an appellate court finds the evidence to be insufficient to establish an element of the charged offense, but there is an available lesser-included offense that the jury necessarily found for which the evidence is sufficient, the appellate court must reform the judgment to reflect the lesser-included offense and remand for a new punishment hearing.[24] Sexual assault and indecency with a child are lesser-included offenses of the continuous child trafficking offense charged in appellant's indictment, the jury would have necessarily found that appellant committed those offenses, and the evidence was clearly sufficient to support his commission of those offenses. Because the State charged only one count of continuous child trafficking, reformation of the judgment can reflect only one of these lesser-included offenses.[25] Therefore, I would reform appellant's conviction to reflect a conviction on the offense of sexual assault and remand the case for a new punishment hearing.

I respectfully dissent.

---

24. *Thornton v. State*, 425 S.W.3d 289, 300-01 (Tex. Crim. App. 2014).

25. *See Martinez v. State*, 225 S.W.3d 550, 554 (Tex. Crim. App. 2007) ("[A]n indictment cannot authorize more convictions than there are counts.").