

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00273-CR

Mark Henry **BENAVIDES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 186th Judicial District Court, Bexar County, Texas
Trial Court No. 2017CR7193
Honorable Dick Alcala, Judge Presiding

Opinion by:    Beth Watkins, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Luz Elena D. Chapa, Justice
    Beth Watkins, Justice

Delivered and Filed: October 30, 2019

AFFIRMED

A jury found appellant Mark Henry Benavides guilty of six counts of continuous trafficking of persons and assessed punishment at eighty years' confinement for each count. On appeal, Benavides contends the trial court erred by admitting certain witness testimony, denying his request for a mistrial, and failing to include an accomplice witness immunity instruction. He also challenges the constitutionality of the statute making continuous trafficking of a person a criminal offense. We affirm the trial court's judgment of conviction.

## BACKGROUND

The San Antonio Police Department investigated Benavides, a criminal defense attorney, after a woman alleged he forced her to have sex with him in exchange for legal services. During the investigation, a detective met with other women who made the same allegations. The women alleged that Benavides, who was their attorney, met with them—usually at their homes—to discuss their cases, then drove them to a motel to have sex. The women alleged Benavides made them have sex with him on multiple occasions and recorded the sexual encounters despite their objections.

The investigation ultimately led to the discovery of more than 200 videos of Benavides having sex with the women as well as directing them what to say and how to act on video. The State ultimately charged Benavides with six counts of continuous trafficking of persons. At trial, the jury heard testimony from several witnesses, including Bexar County detectives and investigators, a clinical psychologist, and six women who alleged Benavides forced them to have sex with him in exchange for legal services. The State also introduced the videos, which Benavides had labeled by date, name, and sexual act, and stored at his home. After the jury found Benavides guilty on all six counts and assessed punishment at eighty years' confinement for each count, the trial court signed a judgment consistent with the jury's verdict. Benavides appealed.

## ANALYSIS

### *Admission of Dr. Pierce's Testimony*

In his first issue, Benavides argues the trial court erred in admitting testimony from the State's expert, Dr. Aaron Pierce, that two of the six complainants exhibited symptoms of human trafficking because such testimony was conclusory, speculative, and invaded the province of the jury. The State responds that Dr. Pierce's testimony was properly admitted because Dr. Pierce was qualified to express an opinion as to the characteristics of sexual assault victims. The State

also argues that even if the testimony was inadmissible, the admission of the testimony was harmless error.

*Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). An abuse of discretion occurs only if the trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016). We may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

*Applicable Law*

"To be admissible, expert testimony must assist the trier of fact." *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (internal quotations omitted); *see* TEX. R. EVID. 702. When the jury is not qualified to "the best possible degree" to determine a particular issue intelligently, expert testimony is helpful. *Schutz*, 957 S.W.2d at 59. Expert testimony is not helpful, however, if it constitutes "a direct opinion on the truthfulness" of a complainant's allegations." *Id*. "[T]here is a 'fine but essential line' between helpful expert testimony and impermissible comments on credibility." *Id.* (quoting *State v. Myers*, 382 N.W.3d 91, 98 (Iowa 1986)).

*Application*

The State called Dr. Pierce, a psychologist with more than twenty years of experience in treating sex offenders and victims, to testify about grooming behaviors and that victims of sexual abuse may respond differently than a layperson would expect. On direct examination, Dr. Pierce testified that offenders typically groom their victims by developing a relationship with them so

that when the crime is committed, the victim is more likely to keep it a secret. According to Dr. Pierce, offenders are often in a position of power and can coerce victims "to go along with it" by using emotional force. Dr. Pierce added an attorney would "certainly" have power over a client due to an attorney's knowledge of the legal system. When asked about human trafficking, Dr. Pierce testified human traffickers often look for people who are "exceptionally weak" and easy to control, making them less likely to report a crime. For these reasons, Dr. Pierce explained, human trafficking victims, like sexual abuse victims, feel embarrassed, guilty, and fear their offender will retaliate against them if they report the crime.

On cross-examination, defense counsel vigorously challenged Dr. Pierce's credibility by pointing out he had not interviewed Benavides or any of the complainants. In response, the State elicited testimony that Dr. Pierce was present when two of the complainants testified and was able to observe their demeanor and mannerisms. The State then asked whether he believed the two complainants exhibited typical symptoms of human trafficking victims. The trial court overruled Benavides's timely objection, and Dr. Pierce testified that both complainants displayed themselves in ways consistent with sexual abuse and human trafficking victims he had examined. He further added that based on his experience and the literature, people respond in a variety of different—and sometimes unpredictable—ways to being sexually assaulted.

Benavides does not dispute that Dr. Pierce was qualified to testify as an expert. Rather, he argues Dr. Pierce's testimony was conclusory and speculative because it was "tantamount to testifying that the women were being truthful in their testimony." We disagree. Dr. Pierce's testimony drew no conclusions and made no speculation as to the two complainants' truthfulness. Dr. Pierce simply was not asked his opinion of the two complainants' credibility. Rather, he spoke generally about whether the two complainants demonstrated behaviors of human trafficking victims. *See DeLeon v. State*, 322 S.W.3d 375, 382–83 (Tex. App.—Houston [14th Dist.] 2010,

pet. ref'd) (holding expert's statements that complainant exhibited behavior similar to sexually abused child was admissible and not comment on truthfulness). Because, inter alia, the State offered this testimony to rebut Benavides's attempts to discredit Dr. Pierce on the basis that he lacked personal knowledge of the two complainants or Benavides, we cannot say that the trial court abused its discretion in admitting Dr. Pierce's testimony.

Even assuming the trial court erred in overruling Benavides's objections, any error must be disregarded unless it affected Benavides's substantial rights. *See* TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). The erroneous admission of evidence does not require reversal if, after examining the record as a whole, we have a fair assurance that the error did not influence the jury or had but a slight effect. *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008).

After examining the record as a whole, we conclude that the admission of Dr. Pierce's testimony did not have a substantial or injurious effect or influence on the jury. *See King*, 953 S.W.3d at 271. Here, the jury heard testimony from the two complainants that Benavides was their lawyer and he made them have sex with him multiple times in exchange for legal services. The jury also saw video excerpts of the sexual encounters between Benavides and the two complainants. Moreover, the trial court instructed the jurors that they were the "exclusive judges of the facts provided, of the credibility of the witnesses, and of the weight to be given to the testimony." *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996) (noting that absent evidence to contrary, we presume jury followed instructions provided in charge). We therefore overrule Benavides's first issue.

### *Mistrial*

Benavides next argues the trial court erred in denying his motion for mistrial when one of the jurors fainted following the presentation of video evidence. According to Benavides, the juror's reaction was unduly prejudicial and deprived him of his right to a fair trial by an impartial jury. In response, the State argues that Benavides inadequately briefed this issue and therefore waived it. Because Benavides provides some argument to support this issue with appropriate citations to authorities and to the record, we will address it. *See* TEX. R. APP. P. 38.1(i).

### *Standard of Review*

We review a trial court's decision to deny a motion for mistrial for abuse of discretion, and we will not reverse that decision unless it was outside the "zone of reasonable disagreement." *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010). A mistrial is appropriate where "error is so prejudicial that expenditure of further time and expense would be wasteful and futile." *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "The determination of whether a given error necessitates a mistrial must be made by examining the particular facts of the case." *Id.*

### *Application*

On the first day of trial, the trial court admitted State's Exhibit 32 ("SX32"), a graphic video of Benavides having sex with one of the complainants. As the State played the video for the jury, the bailiff informed the trial court that the jurors needed a break. The trial court granted the request, and as the bailiff led the jurors out of the courtroom, Juror 8 fainted. After Juror 8 recuperated, the jurors went back into the courtroom. The trial court then excused the jury and explained for the record: "About three minutes into the video, the Bailiff indicated to the Court that the jurors needed a break, as the Court granted. As the jurors were being led out to the jury room, a female juror fainted in the hall and she was given time to recuperate." Benavides moved for a mistrial, arguing Juror 8's "strong reaction to the videos" was "unduly prejudicial." After

questioning outside the presence of the remaining jurors, the trial court excused Juror 8 from the courtroom and asked defense counsel if there was any objection to dismissing Juror 8 and replacing her with an alternate juror. Defense counsel did not object, and the trial court dismissed Juror 8.

On appeal, Benavides argues Juror 8's reaction to SX32 "increased [the other jurors'] perception that the video they witnessed was shocking and/or offensive." Even if it did, however, a mistrial would not be warranted unless Benavides could show a reasonable probability that Juror 8's reaction actually interfered with the jury's verdict. *See Coble*, 330 S.W.3d at 292 (applying rule in context of outburst from bystander and witness that interfered with normal proceedings of trial). For instance, in a case where a juror became physically ill and asked to lie down after viewing autopsy photographs, our sister court concluded the juror's reaction "was not so emotionally inflammatory as to prejudice the jury." *Edwards v. State*, 106 S.W.3d 833, 838 (Tex. App.—Dallas 2003, pet. ref'd). There, the trial court appropriately recessed and ensured the juror had recovered before proceeding. *Id.* at 839. Here, the trial court also granted the jurors a break when they needed one and replaced Juror 8 with an alternate juror when it determined Juror 8 could not continue. *See id.* Like the defendant in *Edwards*, Benavides moved for a mistrial but did not request a curative instruction, object to the trial court's replacement of Juror 8 with an alternate juror, or explain to the trial court how Juror 8's reaction actually prejudiced the rest of the jury. *See id.* Accordingly, we conclude the trial court did not abuse its discretion in refusing to grant a mistrial. We overrule Benavides's second issue.

### *Accomplice Witness Immunity Instruction*

Benavides contends the trial court erred in denying his request for an accomplice witness immunity instruction. According to Benavides, the trial court should have instructed the jury that each of the complainants secured immunity from prosecution in exchange for their testimony because the outcome of the case depended on the jury's assessment of the credibility of these

witnesses. In response, the State argues Benavides failed to timely request this instruction or to demonstrate how he was entitled to it.

*Standard of Review*

We review the trial court's denial of a requested jury instruction for an abuse of discretion. *See Threadgill v. State*, 146 S.W.3d 654, 666 (Tex. Crim. App. 2004). When reviewing a trial court's decision to refuse a requested defensive instruction, we view the evidence in the light most favorable to the defendant's requested submission. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006).

*Applicable Law*

"Under Texas law, the judge must provide the jury with a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury." *Walters v. State*, 247 S.W.3d 204, 208 (Tex. Crim. App. 2007) (internal quotations omitted). A trial judge must instruct the jury on statutory defenses, affirmative defenses, and justifications when such matters are raised by the evidence. *Id.*

Before the formal charge conference, Benavides requested a "Section 28.04 [sic] accomplice witness, testimony of immunity" instruction. Section 20A.04 of the Texas Penal Code provides that a party to an offense may not be prosecuted for any offense about which she is required to testify. TEX. PENAL CODE. ANN. § 20A.04. The statute further provides that such "testimony may not be used against the party in any adjudicatory proceedings, except a prosecution for aggravated perjury." *Id.*

*Application*

Benavides essentially asks us to require a trial court to include an instruction on immunity which the jury could use to discredit the complainants' testimony. We decline to do so. Benavides does not point to any controlling authority supporting such a requirement, and we have not identified a sound basis for such an instruction. First, as our sister court has recognized, a grant of immunity does not necessarily discredit a witness's testimony. *See Jester v. State*, 62 S.W.3d 851, 855–56 (Tex. App.—Texarkana 2001, pet. ref'd) (holding no error when trial court declined to instruct jury that witness who was granted immunity was accomplice as matter of law). Second, unlike the accomplice witness instruction outlined in article 38.14 of the Texas Code of Criminal Procedure, which ensures a defendant's conviction is not based solely on uncorroborated accomplice testimony, section 20A.04 protects trafficking victims by granting them immunity, inducing them to testify when their testimony may inculpate them. *See* TEX. CODE. CRIM. PRO. ANN. art. 38.14; *Jester*, 62 S.W.3d at 855–56. To require a section 20A.04 instruction for the sole purpose of discrediting a witness would violate longstanding Texas law prohibiting trial courts from commenting on the credibility of witnesses. *See Russell v. State*, 749 S.W.2d 77, 78 (Tex. Crim. App. 1988) ("It has long been held that it is reversible error for the trial court to give instructions that refer to the credibility of the witnesses."). Accordingly, we hold the trial court did not err by denying Benavides's request for an accomplice witness immunity instruction. We therefore overrule this issue.

### Section 20A.03 of the Texas Penal Code

Finally, Benavides asserts that section 20A.03 of the Texas Penal Code is unconstitutionally vague as applied to him. Specifically, he argues the term "human trafficking" is ambiguous and turns his incidental action of driving each woman to the motel where they were forced to have sex into the offense of "continuous trafficking." Benavides argues this application

departs from the traditional understanding of "human trafficking" and is contrary to the Legislature's intent.

The State responds that the statute is not unconstitutionally vague because it clearly prohibits Benavides's conduct of transporting women to a new location and forcing them to have sex. The State contends that even though Benavides's conduct may not seem like a "common form[] of human trafficking such as smuggling [a] person[] into the United States from another country to force them into various forms of labor," the statute's language is sufficiently clear to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.

*Standard of Review*

Whether a statute is constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). We begin our review of the constitutionality of a statute with the presumption that the statute is valid and assume the Legislature did not act arbitrarily and unreasonably in enacting the statute. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). "If we can determine a reasonable construction that will render the statute constitutional, we must uphold the statute." *Ex parte Zavala*, 421 S.W.3d 227, 231 (Tex. App.—San Antonio 2013, pet ref'd). The burden rests upon the party who challenges the statute to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69.

*Applicable Law*

A statute is unconstitutionally vague if its prohibitions are not clearly defined. *Wagner v. State*, 539 S.W.3d 298, 313 (Tex. Crim. App. 2018). A statute must provide a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. *Id.* at 314. A statute is not unconstitutionally vague merely because the words or terms used are not specifically defined. *Id.* The words or terms must be read in context, and we must construe the statute in

accordance with the rules of grammar and common usage. *Id.* "A statute satisfies vagueness requirements if the statutory language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* (internal quotations omitted). In addressing an as applied challenge, we will consider whether the statute is vague as applied to the defendant's conduct. *Id.*

*Application*

Under section 20A.03 of the Penal Code, a person commits continuous trafficking of persons "if, during a period that is 30 or more days in duration, the person engages two or more times in conduct that constitutes an offense under Section 20A.02 [trafficking of persons] against one or more victims." TEX. PENAL CODE § 20A.03(a). Section 20A.02 provides that a person commits the offense of trafficking of persons if the person knowingly "traffics another person with the intent that the trafficked person engage in forced labor or services." *Id.* § 20A.02(a)(1). The statute further defines "traffic" to mean "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4).

When construing these sections in accordance with the rules of grammar and common usage, the statute clearly prohibits a person from transporting another person with the intent that the transported person engage in forced services more than once in a 30-day period. *See id.* § 20A.03(a); *Wagner*, 539 S.W.3d at 314. The Legislature defined the term "traffic" to include transporting a person, specifically defining what conduct constitutes "traffic" under section 20A.03(a). *See* TEX. GOV'T CODE ANN. § 311.011(a)(b) (mandating words and phrases with legislative definitions shall be construed accordingly). An act like driving falls within the plain meaning of the term "transport." *See Ritz v. State*, 533 S.W.3d 302, 309 (Tex. Crim. App. 2017) (Newell, J., concurring) (pointing out evidence that defendant drove minor to and from his home to have sex constituted evidence of "transporting" under continuous trafficking statute). Based on

the plain text of the statute, a person of ordinary intelligence is placed on notice that driving another person with the intent to force the other person to engage in prostitution more than once during a period of 30 days constitutes the offense of continuous trafficking. *See Wagner*, 539 S.W.3d at 314. This construction is reasonable and is consistent with our belief that the Legislature did not act unreasonably in including the driving of another person to a location with the intent to force that person to engage in sex in the definition of trafficking. *See Wagner*, 539 S.W.3d at 314; *Ritz*, 533 S.W.3d at 309.

Here, the evidence shows Benavides drove women to a motel where he forced them to have sex with him in exchange for his legal services. The record further reflects Benavides repeated this behavior more than once over the course of 30 days. This conduct is prohibited under the plain text of the continuous trafficking statute, and this result is not an absurd one. *See Wagner*, 539 S.W.3d at 314; *Ritz*, 533 S.W.3d at 309. Because Benavides failed to show that the continuous trafficking statute is unconstitutionally vague as applied to him, we overrule his final challenge.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment of conviction.

Beth Watkins, Justice

DO NOT PUBLISH