# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-22-00269-CR

---

**Zachariah Joshua Holm, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 207TH DISTRICT COURT OF COMAL COUNTY**
**NO. CR2018-417, THE HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Zachariah Joshua Holm was convicted by a jury of trafficking of a child (count I), aggravated sexual assault of a child (counts II–IV), indecency with a child by contact (count V), sexual performance by a child (count VI), and possession of child pornography (count VII) and sentenced by the trial court to 30 years' confinement on counts I through IV, 20 years' confinement on count V, and 10 years' confinement on counts VI and VII. The trial court ordered that the sentences run concurrently. In a single issue on appeal, Holm challenges the sufficiency of the evidence supporting his trafficking conviction. We will affirm the trial court's judgments of conviction.

# BACKGROUND[1]

In December 2017, 16-year-old Michelle Christina[2] attended a party with friends at which she consumed alcohol and marijuana. During the party, she posted a message on social media asking for someone to pick her up "because [she] was very intoxicated." Holm, an adult acquaintance, responded to her post and picked her up in a car. He gave her Xanax, and they drove approximately 25 minutes to a park near his residence where they smoked marijuana.

After staying at the park for an hour or two, Holm drove Christina to the shed in which he lived on his father's property. Before they arrived, he asked her age. When she told him that she was 16, he replied, "Wow, you're young." Inside the shed, they smoked more marijuana, snorted cocaine, and had vaginal and oral intercourse, which they recorded on his cell phone. Before having sex, he made her promise that she would not tell anyone "[b]ecause of how young she was." Christina, who had warned Holm that he "needed to delete [the videos] because he doesn't need all these recordings of a child," attempted unsuccessfully to delete them from his phone. The following day, they woke around noon, and he took her home. They maintained a relationship for approximately two weeks, but Christina ended it when her friend sent her a copy of one of the videos she had made with Holm.

Under pressure from her family, Christina reported the incident to police and participated in a forensic interview. From information she provided, officers obtained a search

---

[1] We limit our recitation to the facts necessary to advise the parties of the Court's decision and reasons for overruling Holm's sole issue. *See* Tex. R. App. P. 47.1, .4. Consistent with the standard of review, the facts are based on the trial evidence viewed in the light most favorable to the verdict. *See Jackson v. State*, 530 S.W.3d 738, 739 (Tex. App.—Houston [14th Dist.] 2017, no pet.).

[2] Because the complainant was a minor at the time of the offense, we refer to her by a pseudonym. *See* Tex. R. App. P. 9.10(a)(3); *Jones v. State*, 571 S.W.3d 764, 772 (Tex. Crim. App. 2019).

warrant for Holm's shed. During the search, they observed drug paraphernalia, a Samsung cellphone, a camera containing a memory card, and a white iPhone. The officers seized the iPhone pursuant to a second warrant and, following a forensic extraction, recovered five video files and several images. At trial, Detective Frank Cockrell with the Comal County Sheriff's Office testified that four of the videos depicted Holm and Christina engaging in oral sex. He also testified that the images were consistent with the contents of the video files and that they showed Christina's genitalia and her performing oral sex on Holm.

Holm was charged with trafficking of a child, three counts of aggravated sexual assault of a child, indecency with a child by contact, sexual performance by a child, and possession of child pornography. Before trial, he pleaded guilty to all but the trafficking and aggravated sexual assault counts. The jury found him guilty of all of the charges. Following a punishment hearing, the trial court sentenced him to 30 years' confinement on counts I through IV, 20 years' confinement on count V, and 10 years' confinement on counts VI and VII, with the sentences to run concurrently.[3] This appeal followed.

## DISCUSSION

In his only issue, Holm contends that the evidence presented at trial is legally insufficient to support his trafficking conviction. As charged in the indictment, a person commits the offense of trafficking of a child if he knowingly traffics a child and by any means

---

[3] "[A] guilty plea to a jury results in a unitary trial before that jury." *In re State ex rel. Tharp*, 393 S.W.3d 751, 758 (Tex. Crim. App. 2012); *see* Tex. Code Crim. Proc. art. 37.07. In the present case, however, although Holm entered guilty pleas to three counts before the jury, he later asserted through counsel that he had misunderstood and testified at a hearing outside the jury's presence that he wished for the trial court to assess punishment. The State "acquiesce[d] in [the court's] setting the punishment, even though it should become unitary." Neither side challenges the trial court's assessment of punishment on appeal.

causes the trafficked child to engage in, or become the victim of, conduct prohibited by: Section[4] 21.11 (Indecency with a Child), Section 22.011 (Sexual Assault), Section 22.021 (Aggravated Sexual Assault), Section 43.25 (Sexual Performance by a Child), or Section 43.26 (Possession or Promotion of Child Pornography). *See* Tex. Penal Code § 20A.02(a)(7). "'Traffic' means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4).

Although Holm concedes in his briefing that "he drove [Christina] back to his house; they had consensual sex, but she was underage"—and that therefore "[t]he evidence supports those convictions"—he argues that the plain language of the trafficking statute is ambiguous, that effectuating the statute's plain language would lead to absurd results, and that extratextual factors reflect that the statute was not intended to criminalize conduct such as his. *See Id.* § 20A.02(a)(7).

Under his interpretation of the statute, grounded in Presiding Judge Keller's dissent in *Ritz v. State*—a case that dealt with similar arguments—the statute's structure and grammar compel the conclusion that subsection 20A.02(a)(7) "applies only when the actor traffics a child and causes the child to be subjected to a sex offense committed by *someone other than the actor*." 533 S.W.3d 302, 312 (Tex. Crim. App. 2017) (Keller, P.J., dissenting) (emphasis added). Quoting Presiding Judge Keller, Holm insists that the statute's "structural characteristics . . . at least indicate an ambiguity" and that the Court must therefore "look beyond the plain meaning of the statute to extratextual factors," which demonstrate that his conduct "cannot be characterized as human trafficking." *Id.* at 312–13. Likewise, he asserts, "[b]asing a prosecution on 'traffic' as a standalone term, without placing it in the context of the entire

---

[4] The term "Section" refers to the Texas Penal Code.

statute, produces absurd results," as such a construction "renders superfluous the statutory provisions that assign punishment to most of the sex offenses in the Penal Code because proving those offense would necessarily prove the offense of trafficking."

When reviewing the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Chambers v. State*, 580 S.W.3d 149, 156–57 (Tex. Crim. App. 2019); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Sometimes that is simply a matter of reviewing the record to determine whether there is sufficient evidence to establish a particular element of an offense. *Chambers*, 580 S.W.3d at 156. Other times, however, it requires us to determine the meaning of the statute under which the defendant was prosecuted and ask whether the defendant's conduct actually constitutes an offense under the statute. *Id.* (citing *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015)); *see Ratliff v. State*, 663 S.W.3d 106, 114 (Tex. Crim. App. 2022). "That question, like all statutory construction questions, is a question of law, which we review *de novo*." *Liverman*, 470 S.W.3d at 836 (citing *Moore v. State*, 371 S.W.3d 221, 227 (Tex. Crim. App. 2012) ("[A]ppellate construction of a statute may be necessary to resolve an evidence-sufficiency complaint when alternative statutory interpretations would yield dissimilar outcomes.")).

In interpreting a statute, we give effect to the plain meaning of the statute's language, unless the statute is ambiguous or the plain meaning leads to absurd results that the Legislature could not possibly have intended. *Chambers*, 580 S.W.3d at 155; *State v. Kahookele*, 640 S.W.3d 221, 225 (Tex. Crim. App. 2021). We read words and phrases in context; construe them according to normal rules of grammar and usage; presume that every word has been used for a purpose; and give effect to each word, phrase, clause, and sentence when reasonably

5

possible. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020); *Chambers*, 580 S.W.3d at 155. Where statutory terms have a technical meaning, we will construe them consistent with that meaning. *Dunham v. State*, 666 S.W.3d 477, 484 (Tex. Crim. App. 2023). If the statute's language is ambiguous or the plain language would lead to absurd consequences, "we can review a variety of extra-textual resources to determine its meaning." *Stahmann*, 602 S.W.3d at 577; *see Kahookele*, 640 S.W.3d at 225 (noting that we may consider such extratextual factors as legislative history "out of necessity"); *Boykin v. State*, 818 S.W.2d 782, 785–86 (Tex. Crim. App. 1991) (explaining that "then *and only then*, out of absolute necessity, is it constitutionally permissible for a court to consider, in arriving at a sensible interpretation, such extratextual factors as executive or administrative interpretations of the statute or legislative history").

This Court has twice had occasion to consider arguments similar to those advanced by Holm, each time finding them to be without merit. In *Ritz v. State*, Ritz contended that the Legislature could not have intended for the anti-trafficking statute[5] to apply to cases that "do not involve 'the illegal trade of human beings for profit or for sex trafficking'" and argued that applying the statute under comparable facts effectively increased the punishment range for all sexual offenses involving a minor because "anytime an adult engages in sexual activities with a minor the adult will be subject to prosecution for trafficking of persons." 481 S.W.3d 383, 385 (Tex. App.—Austin 2015, pet. dism'd). We agreed that Ritz's behavior did not constitute "what would ordinarily be considered 'human trafficking'" and acknowledged that he "may be correct

---

[5] Although Ritz challenged a conviction for continuous trafficking of persons, that statute merely makes it an offense for a person, during a period that is 30 or more days in duration, to engage two or more times in conduct that constitutes an offense under Section 20A.02 against one or more victims. *See* Tex. Penal Code § 20A.03. Our statutory-construction analysis in *Ritz* is consequently controlling in the present case.

that the plain language of this statute is so broad that nearly every adult who has sex with a minor may now be prosecuted as a human trafficker." *Id.* However, we concluded that although broad, the statute's language is unambiguous and included his act of driving the victim "to his home in order to have sex with her." *Id.* at 386. We further concluded that the statute's plain meaning did not lead to absurd results that the Legislature could not have intended, explaining:

> it is possible that the legislature wished to significantly increase the sentences available for persons who commit sexual crimes involving children by including all such crimes under the "trafficking" umbrella. Furthermore, it is possible that the legislature did intend to classify Ritz's conduct as trafficking because it determined that removing a child from the safety of her own home and driving her miles away to the seclusion of the defendant's home in order to sexually assault her is particularly egregious conduct.

*Id.*

In *Griffin v. State*, we affirmed our reasoning in *Ritz* and rejected Griffin's suggestion that we adopt the two-actor interpretation of subsection 20A.02(a)(7) proposed in Presiding Judge Keller's dissent from the Court of Criminal Appeals' dismissal of Ritz's petition for discretionary review. No. 03-19-00429-CR, 2020 WL 7640149, at *5 (Tex. App.—Austin Dec. 23, 2020, pet. ref'd) (mem. op., not designated for publication). Like Holm, Griffin argued that driving a minor to a location to have sex with her did not qualify as "transport[ing]" her under the trafficking statute; that he could only have been guilty of trafficking if he "delivered [the complainant] to a beneficiary who was not himself"; and that by applying the statute to his conduct, the Court would "effectively render useless the punishment provisions for other sex offenses because the conduct prohibited in those other statutes would fall under the trafficking statute." *Id.* at *2.

We rejected Griffin's arguments "[i]n light of our controlling precedent in *Ritz*" and the analysis in Judge Newell's concurrence in the Court of Criminal Appeals' dismissal in that case. *Id.* at *5. Despite recognizing the concerns raised in our *Ritz* opinion and Presiding Judge Keller's dissent, we concluded that "[t]he unambiguous language of the statute allows for convictions in which the person trafficking an individual is also the person who sexually assaults or otherwise victimizes the individual." *Id.* Moreover, we explained that "we do not believe that application of the statute in these circumstances is something the legislature could not have possibly intended." *Id.*

In the present case, we find *Ritz* and *Griffin* to be dispositive. We reaffirm our reasoning and decisions in those cases and reject Holm's recommendation that we instead follow Presiding Judge Keller's dissent and determine that subsection 20A.02(a)(7)'s plain language is ambiguous or leads to absurd results that the Legislature could not possibly have intended. *See id.*; *Ritz*, 481 S.W.3d at 386; *see also McKinney v. State*, 177 S.W.3d 186, 205 n.15 (Tex. App.—Houston [1st Dist.] 2005) (recognizing that dissent is not binding precedent), *aff'd*, 207 S.W.3d 366 (Tex. Crim. App. 2006). Accordingly, we need not consider Holm's analysis of extratextual factors in evaluating the sufficiency of the evidence. *See Kahookele*, 640 S.W.3d at 225; *Griffin*, 2020 WL 7640149, at *5.

Christina testified that when she was 16 years old, Holm picked her up from a party and drove her 25 minutes to a park and then to his residence. She testified that during the drive, she told him that she was 16 and that he responded, "Wow, you're young." She testified that he gave her—and she ingested—Xanax, marijuana, and cocaine. She testified that while at his residence, they had intercourse, that his penis penetrated her vagina and went inside her

mouth, and that his mouth contacted her vagina. She also testified that he recorded their encounter with a cellphone and that she was later sent a copy of one of the videos by a friend.

Detective Frank Cockrell testified that officers were able to extract videos from a cellphone recovered from Holm's residence that depicted Christina and Holm engaging in oral sex. The videos, which were admitted at trial, corroborate Cockrell's testimony.

Holm, who pleaded guilty to the counts of indecency, sexual performance, and possession of child pornography, testified that he was guilty of those offenses. He testified that he "intentionally and knowingly" picked Christina up from the party and that he "intentionally and knowingly" transported her back to his residence. He also testified that he "intentionally and knowingly" engaged in sexual intercourse with her, that he "at least committed sexual assault with [her]," that he would agree that she was a child at the time, that "he had her perform oral sex on [him]," that he "performed oral sex on her," that he placed his mouth on her breast, and that he recorded video of the incident.

We conclude that, viewing the evidence in the light most favorable to the verdict, a rational juror could have found that Holm knowingly transported Christina and caused her to become the victim of, or engage in conduct prohibited by, the statutes criminalizing indecency with a child, sexual assault, aggravated sexual assault, sexual performance by a child, or possession of child pornography. *See* Tex. Penal Code §§ 20A.02(a)(7), .01(4), 21.11. 22.011, 22.021, 43.25, 43.26; *see also Transport*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/transport (last accessed on August 1, 2023) (defining "transport" as meaning "to transfer or convey from one place to another"). Thus, the evidence is legally sufficient to support his conviction under the trafficking statute. We overrule his sole issue on appeal.

**CONCLUSION**

Having overruled Holm's only issue, we affirm the trial court's judgments of conviction.

_____
Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   August 4, 2023

Do Not Publish