# Court of Appeals
## Tenth Appellate District of Texas

---

10-23-00373-CR

---

A.P. Tristan,
Appellant

v.

The State of Texas,
Appellee

---

On appeal from the
54th District Court of McLennan County, Texas
Hon. Susan Kelly, presiding
Trial Court Cause No. 2019-280-C2

---

JUSTICE SMITH delivered the opinion of the Court.

## OPINION

A.P. Tristan appeals his convictions for two counts of trafficking of persons. After finding Appellant guilty, the jury assessed punishment at imprisonment in the Texas Department of Criminal Justice—Institutional Division for seventy-five years for each count, to run consecutively, and a ten thousand dollar fine for each count. In four issues, Tristan contends he received ineffective assistance of counsel, the evidence is insufficient to support

the convictions, and the trial court abused its discretion by admitting extraneous offense evidence.  We affirm.

## BACKGROUND

Tristan, a volunteer coach with a non-profit travel sports program, coached girls' softball teams.  The teams routinely traveled to other cities for weekend tournaments necessitating overnight hotel stays.  Tristan used his position of authority to befriend parents and control their children for several years.  Through manipulation and exploitation, he was able to repeatedly engage in sexual contact with the girls on his teams while at out-of-town tournaments.  He was indicted for, and convicted of, two counts of trafficking of persons, causing the trafficked children to become victims of indecency with a child.  He now appeals his convictions.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his first issue, Tristan contends his trial counsel was ineffective because he failed to move to quash the indictment.  He argues that Texas Penal Code Section 20A.02(a)(7)(B) is unconstitutionally vague as applied to him and that a reasonable person would not be on notice that the innocuous activity of giving a child a ride to a softball tournament could be construed as trafficking. He claims that, at most, he took turns driving a vehicle belonging to Miriam Ramirez, the mother of two players, to assist her in taking some players to out-

of-town tournaments. To avoid the possibility that innocent acts of transportation are construed as trafficking, he suggests that the statute should require proof that the defendant knowingly transported the child with the intent to engage in conduct prohibited by Texas Penal Code Section 21.11, indecency with a child.

Tristan further argues that counsel was ineffective because he failed to object to the jury charge. He contends "[t]he statute is written such that the offender must know that they are trafficking a child and know that they are causing the trafficked child to engage in or become the victim of the prohibited conduct." Tristan asserts that the charge allowed the jury to convict him "on scienter less than required by the statute," that is, without finding that he knowingly caused the trafficked child to engage in or become the victim of the prohibited conduct.

**Standard of Review**

Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees an accused the right to reasonably effective assistance of counsel in criminal prosecutions. U.S. CONST. amend. VI; *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). We look to the totality of the representation in evaluating the effectiveness of counsel. *Lopez*, 343 S.W.3d at 143. To show that trial

counsel was ineffective, the appellant must demonstrate that (1) trial counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) a probability sufficient to undermine confidence in the outcome existed that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). A failure to make a showing under either prong of the *Strickland* test defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003). Appellant has the burden to prove ineffective assistance of counsel by a preponderance of the evidence. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

Constitutionality of Statute

A claim that a statute is unconstitutional as applied is an argument that the statute is generally constitutional but operated unconstitutionally to the defendant due to his particular facts and circumstances. *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (orig. proceeding). We review de novo a challenge to the constitutionality of a statute. *Vandyke v. State*, 538 S.W.3d 561, 570 (Tex. Crim. App. 2017). We afford great deference to the legislature and presume that the statute is constitutional, and that the legislature has not acted unreasonably or arbitrarily. *Id.* The party

challenging the statute normally bears the burden of establishing its unconstitutionality. *Id.* at 571.

The construction of a statute is a question of law that we review de novo. *Liverman v. State*, 470 S.W.3d 831, 836 (Tex. Crim. App. 2015). We interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended. *Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018). In determining plain meaning, words and phrases must be read in context and construed according to the rules of grammar and usage. *Id.*

A statute is void for vagueness if it (1) fails to give a person of ordinary intelligence fair notice of the conduct prohibited, or (2) is so indefinite that it encourages arbitrary and discriminatory enforcement. *Id.* at 313. A statute satisfies vagueness requirements if the statutory language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." *Id.* at 314.

**Analysis**

Constitutionality of Section 20A.02(a)(7)(B)

Ramirez owned the vehicle in which the complainants traveled to tournaments, and Ramirez testified that she did most of the driving. However,

as will be explained in more detail below, the complainants, K.L.I and K.L.II, testified that Tristan drove them to the tournaments.

The penal code provides that a person commits the offense of trafficking of persons if the person knowingly traffics a child and by any means causes the trafficked child to engage in, or become the victim of, conduct prohibited by Section 21.11 (Indecency with a Child). TEX. PENAL CODE ANN. § 20A.02(a)(7)(B). The code defines "traffic" to mean "transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means." *Id.* § 20A.01(4).

Driving falls within the plain meaning of the term transport. *See Ritz v. State,* 533 S.W.3d 302, 309 (Tex. Crim. App. 2017) (per curiam) (Newell, J., concurring) (agreeing that, in case where defendant drove complainant to his home to have sex, the court of appeals properly found sufficient evidence of continuous trafficking of persons); *Benavides v. State*, No. 04-18-00273-CR, 2019 WL 5580260, at *5 (Tex. App.—San Antonio Oct. 30, 2019, pet. ref'd) (mem. op., not designated for publication) (finding that driving falls within the plain meaning of the term transport). Even "assisting" Miriam in taking players to out-of-town tournaments, whereby Tristan was instrumental in conveying the girls from one place to another, falls within the plain meaning of trafficking. *See Ritz*, 533 S.W.3d at 304; *see also Transport*, Black's Law

Dictionary (12th ed. 2024) (To carry or convey (a thing) from one place to another.). Based on the plain text of the statute, it is possible that the legislature intended to classify Tristan's conduct as trafficking. *Ritz*, 533 S.W.3d at 309.

Tristan also asserts that he did not transport either child for the purpose of engaging in sexual contact. The applicable statute does not require a showing that the defendant trafficked a child with the intent to commit the offense of indecency with a child. The plain language of the statute places a person of ordinary intelligence on notice that transporting, including by driving, a child to another location where he then commits the offense of indecency with a child constitutes the offense of trafficking. *See Wagner*, 539 S.W.3d at 313. Further, the statute is not so indefinite that it encourages arbitrary and discriminatory enforcement. *Id.* The language of Section 20A.02(a)(7)(B) prohibiting the trafficking of persons conveys a sufficiently definite warning as to the proscribed conduct. *See id.* at 314. Therefore, that statute is not unconstitutionally vague as applied to Tristan and there was no need for his trial counsel to move to quash the indictment in his case.

Jury Charge

We turn now to Tristan's argument that counsel was ineffective because he did not object to the jury charge on the basis that it did not require the jury

to find that he knowingly caused the trafficked children to engage in or become the victim of the prohibited conduct. Here, the applicable statute requires the State to prove the defendant knowingly trafficked a child and that he caused the trafficked child to engage in certain conduct or become the victim of specified offenses. TEX. PENAL CODE ANN. § 20A.02(a)(7)(B). It does not require proof that the defendant knowingly caused the child to engage in certain conduct or become the victim of specified offenses. The scienter required by the indecency with a child portion of the trafficking of persons statute is found in Section 21.11. The State must prove that the defendant engaged in sexual contact with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(a)(1), (c).

The trial court is required to give the jury a written charge that, among other things, "set[s] forth the law applicable to the case." TEX. CODE OF CRIM. PROC. ANN. art. 36.14. A jury charge which tracks the language of the applicable statute is a proper charge on the statutory issue. *Riddle v. State*, 888 S.W.2d 1, 8 (Tex. Crim. App. 1994).

The pertinent part of the charge provided:

> A person commits the offense of Trafficking of Persons if the person knowingly traffics a child and by any means causes the trafficked child to engage in or become the victim of conduct prohibited by Texas Penal Code Section 21.11 – Indecency with a Child.

This explanation of the law closely tracks Section 20A.02(a)(7)(B) and precisely recites the statute's scienter requirements. *See* TEX. PENAL CODE ANN. § 20A.02(a)(7)(B). Therefore, there is no error in the jury charge regarding the statutorily required scienter, and Tristan's trial counsel's failure to object to the jury charge does not constitute ineffective assistance of counsel.

Because Tristan has not shown that his trial counsel's performance fell below an objective standard of reasonableness, he has not met his burden to show ineffective assistance of counsel. *See Thompson*, 9 S.W.3d at 813; *Rylander*, 101 S.W.3d at 110. We overrule Tristan's first issue.

## SUFFICIENCY OF THE EVIDENCE

In his second and third issues, Tristan contends the evidence is legally insufficient to prove he is guilty of trafficking of persons under either count one or count two. He appears to contend that his actions did not constitute transporting the girls as anticipated by the penal code. Also, he asserts the evidence does not prove he committed indecency with a child.

### Standard of Review

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010);

*Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony, we defer to those determinations. *Brooks*, 323 S.W.3d at 899. We give deference to the trier of fact's responsibility to fairly resolve conflicts in testimony and to draw reasonable inferences from basic facts to ultimate facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record supports conflicting inferences, we presume that the fact finder resolved the conflict in favor of the prosecution and defer to that resolution. *Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

In some cases, sufficiency of the evidence turns on the meaning of the statute under which the defendant has been prosecuted. *See Ritz*, 533 S.W.3d at 304. Thus, we must construe the statute to determine whether his conduct

actually constituted an offense under the statute. *Liverman*, 470 S.W.3d at 836.

**Applicable Law**

A person commits the offense of trafficking of persons if he knowingly traffics a child and by any means causes the trafficked child to engage in, or become the victim of conduct prohibited by Texas Penal Code Section 21.11, indecency with a child. TEX. PENAL CODE ANN. § 20A.02(a)(7)(B). A person commits indecency with a child if, with a child younger than seventeen, he engages in sexual contact with the child or causes the child to engage in sexual contact. *Id*. § 21.11(a)(1). "Sexual contact" means any touching of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. *Id*. § 21.11(c)(1). In Chapter 20.A, to "traffic" means to transport, entice, recruit, harbor, provide, or otherwise obtain another person by any means. *Id*. § 20A.01(4).

**Analysis**

K. L.I, age 22 at the time of trial, testified that she started playing on a team coached by Tristan when she was ten or eleven, and played on his team until she was 15 years old. At the same time, he also coached a team that her older sister, K.L.II, played on. They had out-of-town tournaments about every other weekend. Her parents were able to attend only about half of those. She

testified that, when her parents did not attend, Tristan was responsible for her and drove her to the tournaments. On cross-examination, K.L.I testified that Tristan "usually" drove them. The car they rode in belonged to Miriam Ramirez, the mother of two players. K.L.I stayed in a hotel room with Tristan and others every time her parents did not attend. Usually, they stayed in a hotel room that had two beds. In one bed, Miriam and her two daughters, K.E. and A.E., would sleep together. Tristan, K.L.I, and another player, B.D.L.R., would sleep together in the other bed. Tristan did not want anyone to sleep on the floor. Even when a couch was available, he slept in the bed.

K.L.I testified that the first time Tristan touched her inappropriately was when she was twelve or thirteen. And he did the same thing every time they went to a tournament without her parents. She testified that, while in bed, usually between 2:00 and 5:00 a.m., he would start with massaging her. Then he would move his hand up her thigh and touch her vagina and her "butt," and he would move his hand from her shoulder and hip to her breasts, under her clothes. It would last for about an hour and a half, maybe two hours. He thought she was asleep. When she began to move around, he would wait and then he would begin it again. While touching her, he made a "deep breath moaning kind of noise," as if "he was enjoying it. Like a relief."

K.L.II, age 24 at the time of trial, testified that she started playing on a team coached by Tristan when she was ten to twelve years old. They had out-of-town tournaments "pretty much" every weekend. She traveled by car to the tournaments, sometimes with her parents and sometimes with Tristan, Miriam Ramirez, and two other players. When her parents were not at the tournament, Tristan was in charge of her. They took Miriam's car, but Tristan drove. When asked if Miriam drove, she answered, "No. Not really. It was mainly him." The hotel rooms had two queen beds. Miriam and her two children slept in one bed, and K.L.II slept in the other bed with one or two other girls and Tristan. None of the girls wanted to sleep next to Tristan. She testified that Miriam's husband "really wasn't ever there."

Beginning in the summer before her sophomore year, Tristan touched her inappropriately while in the hotel bed. Around 3:00 to 5:00 a.m., he would start massaging around her shoulders, slowly go down near her breasts and massage her breasts. Then he would move down to her "vagina area." He would slowly start massaging her thighs and "then slowly work his way up until he got in there." He touched her vagina and massaged all around that area. Sometimes his hands went underneath her clothes. She testified that he would make moaning noises, which caused her to think "he was getting pleased out of it." She would act like she was waking up and he would stop for

a bit. But when he thought she was asleep, "he would start again and it would be the same exact thing every single time." The next day, he acted like nothing happened. It happened every time she went to a tournament without her parents. The last time it happened was when she played her last tournament with his team, when she was sixteen.

Tristan asserts that "the testimony at trial established Appellant was not directly transporting any of the players to and from the softball tournament." Although he was in the car, he contends the "transportation was done by Miriam, and sometimes Appellant for the purposes of getting the players to and from softball games."

Section 20A.01(4) defines "traffic" to include transporting another person. TEX. PENAL CODE ANN. § 20A.01(4). As noted above, driving falls within the plain meaning of the term transport. *See Ritz*, 533 S.W.3d at 309.

The evidence is sufficient for the jury to find that Tristan was the driver. Both K.L.I and K.L.II testified that Tristan drove them to the tournaments. *See Lawrence v. State*, No. 02-23-00238-CR, 2024 WL 3282193 at *5 (Tex. App.—Fort Worth July 3, 2024, pet. ref'd) (holding that defendant's act of driving complainant to motel falls within plain meaning of definition of trafficking in trafficking statute). Although K.L.I later qualified her testimony by saying Tristan "usually" drove, and K.L.II said "mainly" Tristan was the

driver, to the extent this testimony can be considered conflicting, we defer to the jury's resolution of those conflicts. *See Hooper*, 214 S.W.3d at 13. Johnny, the complainants' father, testified that he believed Tristan drove. Additionally, the jury could disregard Miriam's testimony that she, her husband, and Tristan took turns driving and that she did most of the driving. *Id.*

Even if he was not the sole driver, there is no doubt Tristan was instrumental in conveying the girls to softball tournaments. *See Transport*, Black's Law Dictionary (12th ed. 2024) (To carry or convey (a thing) from one place to another.). There is nothing in Chapter 20A that requires the conclusion that one cannot be guilty of committing trafficking of persons if he is not driving the vehicle. As explained above, construing Section 20A.02(a)(7)(B) in accordance with the plain meaning of its text, we determine that the statute includes acts peripheral to driving where the actor is instrumental in conveying a person from one place to another. *See Ritz*, 533 S.W.3d at 304. As stated earlier, it is possible that the legislature intended to classify Tristan's conduct as trafficking based on the plain text of the statute. *See id.* at 309. Therefore, his conduct constitutes an offense under the statute. *See Liverman*, 470 S.W.3d at 836.

To the extent Tristan may be asserting that the evidence is insufficient to support his convictions because the purpose of traveling out of town was to play in softball tournaments, not to engage in sexual contact with the girls, we disagree. Again, the statute does not require proof that the defendant traffics a person for a particular purpose. The State must prove the defendant transported a child *and* caused that child to be the victim of sexual contact, with intent to arouse or gratify the sexual desire of any person. TEX. PENAL CODE ANN. §§ 20A.02(a)(7)(B); 21.11(a), (c). The wording of the statute does not eliminate the possibility that there is also a valid reason for travel.

Finally, Tristan asserts the evidence is insufficient to prove he engaged in sexual contact with either K.L.I or K.L.II by touching her anus, breast, or genitals with the intent to arouse or gratify the sexual desire of any person. K.L.I testified that, on numerous occasions, Tristan touched her vagina, her "butt," and her breasts. K.L.II testified that, on numerous occasions, Tristan touched and massaged her breasts and vagina. Both girls testified that Tristan made moaning noises while touching them. The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981); *Connell v. State*, 233 S.W.3d 460, 467 (Tex. App.—Fort Worth 2007, no pet.) (mem. op.).

An oral expression of intent is not required; the conduct itself is sufficient to infer intent. *C.F. v. State*, 897 S.W.2d 464, 472 (Tex. App.—El Paso 1995, no writ). Additionally, evidence of a common pattern of similar acts is admissible as tending to prove intent. *See Ranson v. State*, 707 S.W.2d 96, 97 (Tex. Crim. App. 1986). A complainant's testimony alone is sufficient to support a conviction for indecency with a child. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd). We conclude the evidence is sufficient for the jury to have found the essential elements of both counts of the offense of trafficking of persons by trafficking a child and causing her to become the victim of conduct constituting indecency with a child. *See* TEX. PENAL CODE ANN. § 20A.02(a)(7)(B); *Isassi*, 330 S.W.3d at 638. We overrule Tristan's second and third issues.

## EXTRANEOUS OFFENSE EVIDENCE

In his fourth issue, Tristan contends the trial court abused its discretion by allowing the extraneous offense testimony of B.S., B.D.L.R., and K.E. He argues that he was not given the statutorily required notice of the State's intent to use the testimony and did not have time to prepare for cross-examination of these witnesses and adjust his trial strategy. Tristan also

asserts that the trial court did not properly complete a Rule 403 balancing test, and the probative value was outweighed by unfair prejudice.

**Standard of Review**

We review the trial court's decision to admit evidence for abuse of discretion. *Winegarner v. State*, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007). We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Id.* The trial court's evidentiary ruling must be upheld if it is reasonably supported by the record and is correct under any applicable theory of law. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016).

**Applicable Law**

Because an accused must be tried only for the offense for which he is charged and may not be tried for a collateral crime or for being a criminal generally, extraneous offense evidence is usually not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1); *Stafford v. State*, 813 S.W.2d 503, 506 (Tex. Crim. App. 1991). However, in prosecutions for sexual offenses against children under the age of seventeen Texas Code of Criminal Procedure article 38.37 permits the admission of evidence concerning extraneous offenses committed by the defendant against others. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(a), (b). The unique nature of sexual

assault crimes justifies admitting extraneous offense evidence. *See Jenkins v.*

*State*, 993 S.W.2d 133, 136 (Tex. App.—Tyler 1999, pet. ref'd).

Article 38.37, Section 2(b) provides that:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b). Subsection 2(b) applies to

specified offenses, including indecency with a child. *See id.* art. 38.37,

§ 2(a)(1)(C).

When evidence of a defendant's commission of one of the offenses listed

in article 38.37, Section 2(a) is relevant under article 38.37, the trial court must

conduct a Rule 403 balancing test upon proper objection or request. *West v.*

*State*, 554 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Pursuant to Rule of Evidence 403, the trial court must weigh the probative

value of the evidence against the potential for unfair prejudice. TEX. R. EVID.

403. "Probative value" is the measure of "how strongly [the evidence] serves to

make more or less probable the existence of a fact of consequence to the

litigation—coupled with the proponent's need for that item of evidence."

*Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). Unfair

prejudice refers to a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005). "Evidence might be unfairly prejudicial if, for example, it arouses the jury's hostility or sympathy for one side without regard to the logical probative force of the evidence." *Gigliobianco*, 210 S.W.3d at 641.

When a trial court conducts a Rule 403 balancing test, it must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* at 641-42.

**Analysis**

Initially, Tristan asserts that the State did not provide him with the thirty days' notice required by law. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 3. The record includes the State's amended notice of intent to use evidence pursuant to article 38.37. It specifies the intent to use evidence of sexual offenses against K.E., B.S., and B.D.L.R. The certificate of service shows it

was served on Tristan's counsel on October 7, 2023. Counsel acknowledged at trial that the amended notice was served on October 7. The trial began on November 6, 2023, making the notice timely. *Id.*

At the article 38.37 hearing, counsel for the defense asked the trial court to exclude the extraneous witnesses' testimony to prevent confusion, but mainly based on "unfair surprise and undue prejudice." The court and defense counsel discussed whether Tristan received adequate notice of the State's intention to use the extraneous witnesses' testimony. The court asked defense counsel, "[s]o is your objection mostly that it's surprise and notice and that if you had received it earlier . . . . you believe that it would be, at least, allowable for me to admit it?" Counsel responded, "Correct, Judge." Although defense counsel never mentioned Rule 403, and the discussion at the hearing was murky, we will assume that Tristan's Rule 403 complaint was preserved. *See* TEX. R. APP. P. 33.1.

Next, we consider whether the testimony of the three extraneous witnesses was more prejudicial than probative. Tristan complains of the amount of time that it took to present the testimony of the three extraneous witnesses and asserts that he was essentially tried for trafficking five girls. Therefore, he contends, the danger of the jury finding him guilty for simply being a criminal in general was greatly increased.

B.S. testified that Tristan became her softball coach when she was nine or ten years old. She played on that team for six years. Usually, when her parents were not able to attend tournaments, Tristan would take her in his car along with other players. Sometimes, Miriam or Marcos Estrada[1] would be in the car also. B.S. would stay in a hotel room with all of them. She shared a bed with Tristan and another player while the Estradas were in the other bed. One night around midnight, while at a tournament when she was sixteen, Tristan touched her breast, her "butt," and "the outsides of [her] vagina." He massaged and grabbed her breasts and "butt" and "all around." B.S. could see that while he was touching her, he was touching B.D.L.R., the other player who was in the same bed, on her vagina. The touching lasted for an hour or a little more. The following night, also in the hotel bed, Tristan touched her breasts and the "top part of [her] vagina."

For about eight years, B.D.L.R. played on a softball team coached by Tristan. Often, her parents were unable to take her to the tournaments. She would ride with Tristan, Miriam Ramirez, her daughters, A.E. and K.E., and sometimes Miriam's husband, Marcos. Usually, Tristan drove the car. B.D.L.R. would stay in a hotel room with Miriam, her daughters, and Tristan. The rooms had two beds, and Miriam and her daughters would sleep in one

---

[1] Miriam Ramirez testified that Marcos Estrada was her common law husband. At times in the record, she is referred to as Miriam Estrada.

bed while B.D.L.R., Tristan, and another player would sleep together in the other bed. While in bed late at night, Tristan would start massaging her shoulders, back and legs, and then, using an up and down motion, touch on her vagina and "butt." From the time he first touched her, it happened at every tournament she went to.

K.E., Miriam's daughter, played on a travel softball team for Tristan from the time she was nine or ten until she was fifteen. She knew Tristan before he became her coach because he coached her older brother from the time he was very young. She explained that her parents were close to Tristan, and there was never a time when Tristan was not around. During the summer, tournaments were about every weekend. Her parents took her to most of the tournaments. They shared a hotel room with Tristan. She and her parents would share one bed. Tristan and other players would share the other bed. One time, when she was mad at her mother, she slept in the bed with Tristan and B.D.L.R. During the night, she woke up when Tristan placed her hand on his genitals, which she described as "erect." When she was sixteen, she took a trip to Florida and New York with Tristan, her boyfriend, her nineteen-year-old sister, and her sister's boyfriend. She assumed she would be sleeping in a bed with her sister, but she had to sleep in a bed with Tristan. During the night, he put his hand on her back and then rubbed her "butt."

The first factor we consider is the inherent probative force of the extraneous offense testimony. Because evidence of separate sexual offenses is probative on the issues of intent and a defendant's character or propensity to commit sexual assaults on children if sufficient evidence is provided regarding the extraneous offense, the probative value of sexual offenses committed against other children is generally not substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. *Deggs v. State*, 646 S.W.3d 916, 925 (Tex. App.—Waco 2022, pet. ref'd); *Price v. State*, 594 S.W.3d 674, 680 (Tex. App.—Texarkana 2019, no pet.). Here, Tristan's sexually motivated actions, including indecency by sexual contact, toward other female players on his softball team are highly probative of his character or propensity to engage in sexual contact with K.L.I and K.L.II. *See Deggs,* 646 S.W.3d at 926; *Price*, 594 S.W.3d at 680.

The second factor, the State's need for the evidence weighs in favor of admission. There was no biological evidence and no third-party eyewitnesses. Article 38.37 recognizes the need for such evidence "for any bearing the evidence has on relevant matters." *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b).

With respect to the third factor, we recognize the inherently inflammatory and prejudicial nature of the evidence of Tristan's extraneous sexual offenses against another child does tend to create the potential for a verdict on an improper basis. *See Deggs*, 646 S.W.3d at 926.

Regarding the fourth factor, we consider whether there was a tendency of the evidence to confuse or distract the jury from the main issue in this case, that is, whether Tristan committed the offense of trafficking a child and caused her to become the victim of conduct constituting indecency with a child by engaging in sexual contact. The trial court mitigated the tendency of the extraneous offense evidence to confuse or distract the jury by instructing them that they cannot consider the extraneous offense testimony for any purpose unless they find beyond a reasonable doubt that Tristan committed the other offenses. The court further instructed the jury that they could consider the evidence only for relevant matters, including the state of mind of Tristan and the alleged victims, and the previous and subsequent relationship between Tristan and the alleged victims. Then the trial court identified the elements the State was required to prove by its indictment, thereby redirecting the jury to the main issues in the case. We find the fourth factor weighed in favor of admission.

The fifth factor refers to evidence such as highly technical or scientific evidence that might mislead the jury because it is not equipped to weigh the probative force of the evidence. *See Gigliobianco*, 210 S.W.3d at 641. Here, the evidence in question was neither scientific nor technical. We find the fifth factor weighed in favor of admission.

As to the sixth factor, the extraneous-offense direct testimony comprised less than a fifth of the total time spent on presentation of the State's case. We find the presentation of the extraneous offense evidence did not consume an inordinate amount of time. The last factor favored admission.

We find that the trial court, after balancing the Rule 403 factors, could have reasonably concluded the probative value of the extraneous offense evidence was not substantially outweighed by the danger of unfair prejudice. *See* TEX. R. EVID. 403; *Deggs*, 646 S.W.3d at 927. We find that the trial court did not abuse its discretion in admitting the extraneous offense evidence. Therefore, we overrule Tristan's fourth issue.

## CONCLUSION

Tristan received effective assistance of counsel and the trial court did not err in admitting the extraneous offense testimony. Further, the evidence is sufficient to prove Tristan committed the offense of trafficking of persons as alleged in the indictment in counts one and two.

We affirm the trial court's judgment.

_____

STEVE SMITH
Justice

OPINION DELIVERED and FILED: June 12, 2025

Before Justice Smith,
      Justice Harris, and
      Senior Justice Davis[2]
Affirm
Publish
CRPM



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Texas.